■Birchard, J.
Several questions, growing out of the facts of this case, have been argued with much skill by counsel. ■ ■ In disposing of the' subject, we shall -notice only those which seenv . tb be conclusive of the merits of the case.' And, first, can .this bill be sustained on the ground that complainant has paid *577 money for the use of the defendants, as co-surety, or otherwise ? This depends upon the’ question whether, at the time of payment, any claim for a portion, or the whole of the sum due,' could have been enforced by Putnam against either of them. For where there is no direct, there can be no indirect liability. It seems that Putnam, in 1842, made the attempt to collect of Rees and Hampson, and went so far as to ascertain that the plea of the statute of limitations, passed in 1804, Was not a bar, and, by a division of'this C.ourt,-that .the subsequent-statutes were not operative 'upon the claim; 12 Ohio Rep. 21. The cases progressed no further.
It remains for us to consider whether, ■ upon the facts now in proof, any recovery could have, been obtained, legally, against ány. of thé parties. ” The obligátion was due .the 7 th. of’ December, 1807, more’ than thirty-eight years ago.- .Putnam treated it as a sévéral contract, in 1810. .. The election .he then made was conclusive:-upo¡n him:. As to hind, and all claiming under him from that- time- forward, the' right which' he had against each signer, :.w’as .the'same .as-if .the name-of, each had been affixed to a separate note for the .same amount. It. was out of his power, having thus elected to treat-'the .contract as -several, to come into.-Court at any time thereafter and sue upon it as a joint -obligation. ' Without ■ the aid of any statute; it- seems to us . that either Rees, Rriend or Hampson,-.. might have, relied successfully upon"the great .lapse¡of:time,"a.S raising-the presumption that their obligation had been in some way discharged. At law,'twenty years was sufficient’ to raise the. presumption of payment.. These presumptions are of such' a-character as naturally to increase in force, in -proportion as the, years increase during which they have run. And in this case it would, without the aid of evidence sufficient to rebut it, have been a complete bar eighteen years ago.’ • Now, what is relied upon to do away the- force of the legal presumptions that- have, been thus long,increasing in strength? The fact, that Williamson alone was- sued,'and judgment recovered, in-1814,, and that this j.udgment against him was not .paid off till 1845? Besides-this there is *578 substantially nothing. But he had paid $1200, in 1817, and, after that,' more than twenty years elapsed before any of these parties were called -on for payment. What caused such a delay ? Why was the claim left sleeping till all those who, when living, knew the whole and true history of the transaction were in their graves ? The papers furnish no satisfactory answer, and, for want of that, a court of law should have said, “ Let the claim sleep on forever;” that “ the inference is, that £ if it had been prosecuted in due time, some of its cotempora- £ ries would have been able to furnish evidence showing that it £ had been paid, discharged, released, or in some way arranged £ between the parties.”
It may be that Williamson, for a good consideration, assumed the payment of the entire debt prior to 1810. If so, it could not be expected that the administrators or heirs of his deceased coobligors, after thirty-six years, would be able to make it appear. It is contrary to all human experience to expect any proof from them, or to imagine that they could by any vigilance establish the fact. Yet the parties, while living, acted as we might expect them to act if such were the case. In this connection let us see how conclusive against the presumption, arising from lapse of time, would be the fact that the separate suit had been prosecuted against Williamson. From 1817, the time of the last payment by him, no movement was made towards a further collection. Had a separate suit been instituted as early as 1828, the judgment and proceedings upon it would not have tended to weaken the legal presumption of payment. On the contrary it would, in our opinion, have added to its strength, by showing a sufficient reason why Putnam suffered the residue of that judgment to become dormant. He permitted to happen precisely what would have happened on payment of the residue of the note by one of the other makers.
We hold, then, that in 1845, when the $5661 was paid to Putnam, it was not paid on the account of the co-sureties, or on a then subsisting joint obligation ; that all such relations between the parties had long before become extinct and ceased *579 to exist; that the money paid was in discharge of complainant’s sole liability, and gave him no right to call upon respondents for contribution.

Bill dismissed, toith costs.